Filed 4/9/13  In re A.J. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re A.J. et al., Persons Coming Under the Juvenile Court Law. | |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>ANGELINA J.,<br><br>        Defendant and Appellant. | C071107<br><br>(Super. Ct. Nos.<br>09 JV SQ 2785601,<br>09 JV SQ 2825001,<br>11 JV SQ 2875001) |

This appeal arises from proceedings following a limited reversal of orders terminating parental rights and remand for compliance with the notice provisions of the Indian Child Welfare Act (ICWA).  (25 U.S.C. § 1901 et seq.)  As a result of new inquiry and notice by the Shasta County Health and Human Services Agency (Agency), a tribe was located, the minors were enrolled in the tribe and parental rights were again terminated.  (Welf. & Inst. Code, §§ 224.2, 366.26 [further undesignated statutory

1

references are to this code].)  Mother, Angelina J., appeals, challenging the juvenile court's findings on active efforts, placement preferences and serious emotional and physical damage to the minors if returned to parental custody.  Appellant further argues the Indian child exception to termination should have applied and that all prior orders should be invalidated due to failure to comply with the ICWA.  Appellant also contends that none of these claims were forfeited and, if they were, then counsel provided inadequate representation.  We affirm.

FACTS

Appellant was arrested for domestic violence in December 2008.  The Agency filed a petition to detain one-year-old A.J. in January 2009 due to parental substance abuse, anger and mental health problems.  The juvenile court ordered reunification services for both parents.  Eva J. was born in November 2009 and removed from parental custody.  Reunification services continued to be provided; however, the parents made little progress, testing positive for drugs and alcohol, failing to attend programs and continuing to engage in domestic violence.  In April 2010, the juvenile court terminated services as to A.J., denied services for Eva. J., and set a section 366.26 hearing for both minors.  While the hearing was pending and appellant was in custody, appellant gave birth to E.J. who was detained and placed with his siblings.  The juvenile court denied services for E.J. in February 2011 and set a section 366.26 hearing.  The same day, parental rights were terminated as to A.J. and Eva J.  Parental rights were terminated as to E.J. in June 2011.

The parents appealed the termination orders in case Nos. C067484 and C068578.  The appeals challenged the inquiry and adequacy of notice under ICWA.  Respondent conceded there were some problems with ICWA compliance and this court reversed both appeals for the limited purpose of compliance with ICWA notice and, if a tribe was identified, for a new section 366.26 hearing.

2

The status review report in February 2012 stated both parents had been released from prison. One of father's conditions of parole was to have no contact with appellant. However, both gave the same address as their residence and in November 2011 both were involved in a violent incident serious enough to result in a police report. In January 2012, an arrest warrant issued for father. Father and appellant were living together in their car at a truck stop. Appellant planned to enter a drug treatment program. The minors remained placed together in an adoptive home and were doing well in the placement. The parents had not visited or had contact with the minors for over a year, with the exception of father's single visit with E.J. Prior to their incarcerations, the parents' visits had been reduced due to erratic attendance and troubling conduct. Neither parent made any attempt to maintain a relationship with any of the minors.

As a result of the limited remand in the prior appeals, the Agency conducted further inquiry about the family's Indian heritage and discovered the maternal grandmother now claimed ancestry in the Potawatomi tribe among others. New notice was sent to all relevant tribes. The Citizen Potawatomi Nation (CPN) contacted the Agency in October 2011 and, as a result, the social worker completed applications for the minors for tribal membership in the CPN, the tribe intervened and tribal membership for the three minors was finally granted in March 2012.

Following the first contact with CPN, the social worker maintained a connection with CPN's tribal enrollment specialist, Tasha Alves, and with CPN's ICWA tribal representative and case manager, Laurie Clark, to provide information on the case and to assure that the Agency did what was necessary to maintain the minors' tribal connection. The prospective adoptive parents introduced the minors to their Indian cultural heritage by teaching songs in the tribal language, securing a book on important cultural beliefs, and taking A.J. to a multicultural event to expose her to Native American culture.

The March 2012 report for the section 366.26 hearing and a permanent plan review recommended termination of parental rights and a permanent plan of adoption.

3

The report stated the tribe had not yet stated a position on adoption or placement. The minors remained together in an adoptive home. The caretakers were prepared to provide experiences which would connect the minors with both their Indian and African American heritages. The Agency concluded the minors were likely to be adopted in a reasonable time either by the current caretakers or another family. The report also contained recommended findings for the permanent plan review hearing.

At the combined section 366.26 and permanent plan review hearing in April 2012, the parties stipulated to using a written declaration instead of testimony from the Indian expert selected by the tribe, Laurie Clark. Clark's declaration stated she was employed by the CPN as a case manager for the tribe's FireLodge Children and Family Services department. Clark had reviewed the placement information provided to her and believed the Agency tried, without success, to place the minors with family. Given the lapse of time, she was of the opinion that it was in the minors' best interests to remain together and that the current placement was appropriate in that the foster family appeared to meet the minors' needs and was making an effort to assist the minors in recognizing their cultural heritage. The CPN had no objection to the minors moving toward permanency in the current placement.

The declaration discussed CPN community standards relating to domestic violence, substance abuse, and mental health treatment. The tribe did not condone domestic violence and would remove children from exposure to it. Further, before a child would be returned, the parents had to work toward education, counseling, and development of ways to deal with potentially violent situations. The CPN also did not condone exposing children to substance abuse. Parents were expected to have the capacity to care for their children without impairment. The CPN supported participation in mental health treatment and expected parents to work diligently in treatment to achieve recovery and be able to meet the needs of their children. Clark reviewed the documents regarding the services provided to the parents and opined that the Agency made active

4

efforts to prevent the breakup of the Indian family and that the efforts were unsuccessful. She stated that the court had found services were "reasonable" but noted that the CPN looked to Agency actions which included locating service providers and assisting the family with services and transportation rather than to court findings to assess active efforts.

Clark was convinced that, both at the time of removal and currently, continued custody of the minors by the parents was likely to result in serious emotional or physical damage to the minors. The parents had significant domestic violence and mental health problems and had reasonably attainable goals in the case plans. However, appellant had chosen to discontinue mental health services and psychiatric medications, leave substance abuse treatment, and continue to test positive for multiple substances. Father discontinued his psychiatric medications and tested positive for drugs. Neither parent made visitation a priority and Clark was concerned that continued visitation could prove more damaging to the minors than no visitation. She recognized that the Agency provided full services when A.J. was removed and for a period after Eva J.'s removal but the family continued to deteriorate during the reunification period due to parental resistance and failure to comply with the service plans. The minors had made intellectual and emotional progress in their foster placement and would likely suffer serious emotional or physical damage if returned to the home because the parents lacked the determination to commit to a drug and violence free home.

Clark and counsel for the CPN were present by telephone at the hearing. Clark testified the CPN supported termination of parental rights.

Appellant's counsel made an offer of proof that appellant had participated in substance abuse treatment after her release from prison, attended AA and NA, was in compliance with the terms of her probation, attended a Parent-to-Parent program and was testing clean. Appellant's documents showed she began an outpatient drug treatment program in January 2012 and was continuing to participate in April 2012, showing her

5

commitment to recovery.  She had several negative drug tests and was attending relapse prevention groups.  Counsel argued appellant's efforts showed a change in circumstances although counsel admitted there was little evidence on the best interests of the minors, and asked the court to consider the parent-child bond in determining whether termination was in the minors' best interests.  The Agency objected to any oral motion to modify pursuant to section 388.  When the court inquired, Clark said the CPN had nothing further.

The court denied the oral petition for modification finding it was not in the minors' best interests.  The court found appellant's efforts to stabilize her life came too late for the minors, who deserved permanency.  The court found the minors were adoptable and terminated parental rights.  The minutes of the hearing indicate that at this point, the court adopted and executed the section 366.26 orders as found in Judicial Council form JV-320.  Included in the form is a finding beyond a reasonable doubt that continued custody of  the child by the parent is likely to result in serious emotional or physical damage to the child.  The court then adopted the Agency's recommended findings and orders for the permanency review hearing which included a finding by clear and convincing evidence that ICWA did apply and that continued custody with the parent was likely to cause the Indian children serious emotional or physical damage.[1]  The court

---

[1]     The record, specifically the reporter's transcript, is somewhat unclear as to precisely what occurred when the court issued its findings and orders for the combined hearing.  As a result, we directed the parties to address the effect, if any, of the finding by clear and convincing evidence that continued custody with the parent was likely to cause the Indian children.

Respondent concluded the finding, which appears only in the findings and orders for the permanent plan review as recommended by the Agency and adopted by the court, had no effect on the orders terminating parental rights which appear in the JV-320 form, which included a similar finding made beyond a reasonable doubt as required by ICWA, because the findings were made separately.  Appellant suggests that the lack of clarity indicated that the juvenile court was uncertain of the standard by which the finding had to

6

further found that the minors' placement was required to serve their best interests and the placement was necessary and appropriate. The court selected a permanent plan of adoption and set another permanent plan review hearing.

DISCUSSION

I

Appellant, asserting that the juvenile court may not bypass services when an Indian child is the subject of a dependency proceeding, argues that substantial evidence did not support the juvenile court's finding that the Agency made active efforts to prevent the breakup of the Indian family.

When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence -- that is, evidence which is reasonable, credible and of solid value -- to support the conclusion of

---

be made and that substantial evidence did not support a finding beyond a reasonable doubt.

After careful review of the minutes, the reporter's transcript and the written orders adopted by the court, we are satisfied that the court's somewhat compressed ruling did not conflate the orders of the two pending matters and agree with respondent that the troubling language in the permanent plan review order had no effect on the order terminating parental rights. The above recitation of the facts reflects this conclusion.

Appellant's concern that the court may not have applied the proper standard because it did not articulate that the finding that continued custody by the parents was likely to cause the Indian children serious emotional or physical harm was made beyond a reasonable doubt is not convincing. The court did adopt the JV-320 form and executed it during the hearing before it addressed the permanent plan review orders. It is settled that there is no need to articulate a well known standard. (*In re Bernadette C.* (1982) 127 Cal.App.3d 618, 625.) The lack of clarity in the record raised the concern, not that the court misunderstood the standard, but that the orders for the two hearings were conflated, thereby potentially affecting the adequacy of the ICWA findings. Having concluded the record adequately demonstrated the findings and orders for the two hearings were separate and the ICWA findings necessary for termination properly were made and appear in the orders terminating parental rights, we conclude the findings in the permanent plan review, which were not required by ICWA (25 U.S.C. § 1912(e) & (f)), had no effect on the termination order.

7

the trier of fact. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) In making this determination we recognize that all conflicts are to be resolved in favor of the prevailing party and that issues of fact and credibility are questions for the trier of fact. (*In re Jason L.*, *supra*, 222 Cal.App.3d at p. 1214; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16.) The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

"Any party seeking to effect . . . termination of parental rights to [] an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." (25 U.S.C. § 1912(d); § 361.7, subd. (a).) "What constitutes active efforts shall be assessed on a case-by-case basis. The active efforts shall be made in a manner that takes into account the prevailing social and cultural values, conditions, and way of life of the Indian child's tribe. Active efforts shall utilize the available resources of the Indian child's extended family, tribe, tribal and other Indian social service agencies, and individual Indian caregiver service providers." (§ 361.7, subd. (b); see also Cal. Rules of Court, rule 5.484(c).)

In this case, appellant and father were provided extensive reunification services with A.J. to address substance abuse, anger, and mental health problems. Appellant did not actively engage in services and failed to make any progress in reunification, resulting in termination of services for A.J. and bypass of services for the two younger minors. When the case was returned on remand after the first appeal and the minors' tribe was identified, the social worker contacted the tribe, assisted in securing enrollment of the minors and maintained contact with the tribal representative to provide ongoing information on the case. The expert's declaration explained the community standards for the tribe regarding violence, substance abuse and mental health treatment and the tribe's expectations that parents would work diligently to overcome these problems and develop

8

the capacity to care for their children. Appellant and father, despite services designed to address their problems, continued to abuse drugs and alcohol, did not go to or actively engage in remedial programs, continued to participate in domestic violence and did not regularly attend visits, thereby failing to maintain a relationship with the minors and placing their own interests before those of the minors. Ample evidence supports the juvenile court's finding that active efforts, which took into account the prevailing social and cultural values of the tribe, were offered and that those efforts were unsuccessful.

A. *Bypass of services for Eva and E.J.*

Appellant argues section 361.7, subdivision (a), which requires a finding of active efforts, applies "notwithstanding" section 361.5, a statute that permits bypass of services in enumerated circumstances. Appellant therefore contends that in an ICWA case the court must under *all* circumstances make active efforts to provide services. We disagree.

A similar argument, predating the enactment of section 361.7, was made in *Letitia V. v. Superior Court* (2000) 81 Cal.App.4th 1009, where the juvenile court bypassed services in the current case based on unsuccessful reunification efforts in a previous case involving the same parent and a sibling. (*Id.* at p. 1016.) Observing that the law did not require the performance of idle acts and that federal law did not require duplicative reunification services, the court concluded that repeating substantial but unsuccessful efforts to address a parent's entrenched drug problem "would be *nothing* but an idle act." (*Ibid.,* italics & fn. omitted.) The court held that active efforts required only that timely and affirmative steps be taken to avoid the breakup of Indian Families *whenever possible*. (*Id.* at pp. 1015-1016.) In support of what it termed an obvious conclusion, the court cited similar holdings in a number of other jurisdictions. (*Id.* at p. 2017.)

Following enactment of section 361.7, the court in *In re K.B.* (2009) 173 Cal.App.4th 1275, held that ICWA does not prevent denial of services where bypass provisions apply. In *K.B.*, the father had committed a violent felony but argued section 361.7, subdivision (a), required provision of services. The *K.B.* court discussed *Letitia V.*

9

and contrasted its facts to *Letitia V.*, noting that the father had never been offered services but found that doing so would nonetheless be an idle act since he was a registered sex offender for a prior conviction for lewd acts on a child and had reoffended with the half sibling in the current case. (*Id*. at pp. 1283-1284, 1287-1288.)

Whether prior efforts have failed or current circumstances demonstrate the futility of providing services, the ICWA does not require active efforts in every case. The goal of ICWA is to avoid the breakup of an Indian family "whenever possible," not to force Indian children to remain in the limbo of temporary placement while ineffective efforts are made to attempt to encourage unwilling parents to change their entrenched habits. (*Letitia V. v. Superior Court*, *supra*, 81 Cal.App.4th at p. 1016.)

Appellant attempts to distinguish *Letitia V.* because in that case the tribe was actively involved in referrals when the active efforts were made and the tribe was asked to brief the bypass issue. Further, the mother in *Letitia V.* was not making progress and appellant had shown recent progress.

Here, the tribe was involved as soon as it was identified. The tribe was fully informed of the facts of the case, including previous services offered and the parents' progress or lack thereof. The tribe did not suggest that any other services would have been beneficial and, at the section 366.26 hearing, did not suggest that appellant's recent efforts indicated active efforts had not been made. Appellant's efforts subsequent to the bypass to improve her life and address the problems which led to the removal of the minors are circumstances to be addressed in a petition for modification, not in considering whether a prior order bypassing services was in violation of ICWA.

B. *Effect of late discovery of Indian heritage*

Appellant argues that services prior to the first order terminating parental rights did not constitute active efforts, there were no efforts of any kind after remand and the

court did not consider cultural values, instead relying on the prior reasonable services findings to support active efforts finding.[2] The record belies these claims.

Prior to finding the minors were Indian children, no active efforts were required. Nonetheless, the record is clear that the social worker did not merely hand the parents a case plan and expect them to complete it. Multiple referrals were made to substance abuse, domestic violence and mental health programs and transportation was provided when needed. Certainly the services offered to the parents were tailored to meet their needs and address the issues which led to the minors' removals.

There is no authority which requires active efforts after remand, but such efforts are apparent here. (*In re K. B.*, *supra*, 173 Cal.App.4th. at p. 1288.) Once the CPN was identified as the minor's tribe, the tribal enrollment specialist and the social worker coordinated efforts to enroll the minors in the CPN tribe. This alone constituted active efforts after the remand. (Cal. Rules of Court, rule 5.482(c).) However there was more. The social worker also engaged the participation of the tribal representative and case manager, Laurie Clark, who was fully informed of the history and progress of the case and was consulted on placement and permanency issues. The tribal representative, in her function as an Indian expert, also provided the court with the cultural context in which to assess the services that had been offered to the parents. As an expert, she could not testify that active efforts were made since that is a question of law and ICWA does not require such testimony to support a finding of active efforts, but she could, and did,

---

[2]    Appellant claims that failure to discover the proper Indian heritage was not her fault. We note that at the time of the first appeal she had made several shifting claims of Indian heritage, ultimately denying any, and based her first appeal on father's claims. During the pendency of the first appeal, the maternal grandmother discovered from her relatives that she, appellant, and the minors, were eligible for membership in a Potawatomi tribe.

provide a context in which the court could assess the efforts made. (*In re K.B.*, *supra*, 173 Cal.App.4th at p. 1287, fn. 12.)

Finally, appellant argues that she was now, by virtue of services she participated in after her release from state prison in October 2011, amenable to active efforts. We disagree.

Following her release, appellant continued her relationship with the father and was involved in a violent incident. Thereafter, she entered an outpatient treatment program and was, by report, doing well during the next four months. Appellant's participation was encouraging, but given her extensive history of substance abuse, domestic violence, and mental health problems, a few months' progress in one area could hardly justify further efforts to reunify the family. Active efforts had been provided to her. The minors were not required to wait for permanency until appellant might participate in and successfully complete services by achieving positive, sustained, long-term results.

## II

Appellant contends the minors were not placed in accordance with the placement preferences of the ICWA and there was no finding of good cause to vary from the preferences.

ICWA provides criteria and a placement preference order for foster care and preadoptive placement of Indian children. "Any child accepted for foster care or preadoptive placement shall be placed in the least restrictive setting which most approximates a family and in which his special needs, if any, may be met. The child shall also be placed within reasonable proximity to his or her home, taking into account any special needs of the child. In any foster care or preadoptive placement, a preference shall be given, in the absence of good cause to the contrary, to a placement with -- [¶] (i) a member of the Indian child's extended family; [¶] (ii) a foster home licensed, approved, or specified by the Indian child's tribe; [¶] (iii) an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or [¶] (iv) an institution for

12

children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs." (25 U.S.C. § 1915(b); § 361.31, subds. (b), (c), (h).) The preference order for adoptive placements is restricted to "placement with [¶] (1) a member of the child's extended family; [¶] (2) other members of the Indian child's tribe; or [¶] (3) other Indian families." (25 U.S.C. § 1915(a); § 361.31, subd. (c).) The tribe may establish a different order of preference by resolution. (25 U.S.C. § 1915(c).)

The prevailing social and cultural standards of the tribe shall be applied in meeting the placement preference. (§ 361.31, subd. (f). ) The prevailing standards may be confirmed by the tribe or a qualified expert witness who is familiar with the tribe's standards. (*Ibid.*) The Agency shall use the services of the tribe whenever available in seeking a placement within the preferences. (§ 361.31, subd. (g).) When no preferred placement is available, the Agency may place the child with a family committed to maintaining the child's connection to extended family and tribal customs (§ 361.5.31, subd. (i).)

Here, the tribe did not change the preference order by resolution and the court was required to follow the ICWA placement preference order absent a finding of good cause to the contrary. The record does not include an explicit finding of good cause; rather the court adopted the recommended finding that "[t]he [Agency] has adhered to the placement preferences when placing the children and has consulted with the children's tribe concerning appropriate placement of the children in that . . . [the] children are not placed in a home listed in the placement preferences set forth in the Indian Child Welfare Act 25 U.S.C. 1903 and Welfare and Institutions Code [section] 361.31 based on the grounds that: There are no available homes for the children that would be within the placement preferences and the [Agency] has consulted the tribal representative who have [*sic*] not yet concurred with the current placement." The court also found the placement "necessary and appropriate."

13

The recommended finding was part of the social worker's report which predated the expert declaration by tribal representative and case manager Laurie Clark.[3]  However, Clark's declaration made it amply clear that she was familiar with the tribal standards, that there was no available placement within the preference list, that the current placement was appropriate and met the minor's needs and, thus, the current foster placement was one within the requirements of section 361.31, subdivision (i).  Under California law, this placement is an acceptable alternative to a preferred placement and thus necessarily meets the requirement of a finding of good cause to avoid the preference. No explicit finding of good cause was required.

III

Appellant contends substantial evidence did not support the juvenile court's finding that continued custody with appellant was likely to cause the minors serious emotional or physical damage as required by ICWA prior to an order terminating parental rights.

"No termination of parental rights may be ordered . . . in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."  (25 U.S.C. § 1912(f).)

When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence -- that is, evidence which is reasonable, credible and of solid value -- to support the conclusion of the trier of fact.  (*In re Angelia P.*, *supra*, 28 Cal.3d at p. 924; *In re Jason L.*, *supra*, 222

---

[3]    Appellant argues that Clark was only an expert and not a tribal representative. However, the record indicates that she acted as the tribal representative several months before the CPN also designated her as its Indian expert.

Cal.App.3d at p. 1214.) All conflicts are resolved in favor of the prevailing party and issues of fact and credibility are questions for the trier of fact. (*In re Jason L.*, *supra*, 222 Cal.App.3d at p. 1214; *In re Steve W.*, *supra*, 217 Cal.App.3d at p. 16.)

Appellant argues the expert's declaration did not constitute substantial evidence because the Indian expert limited her opinion by stating the minors would suffer serious emotional and physical damage if returned to the parents "without supervision." Appellant insists that this limited the opinion to a situation in which all the children are returned to both parents with no supervision when the parents were not determined to commit to a sober nonviolent life and, as such, the opinion was meaningless.

We do not read the expert's declaration as imposing limitations on her opinion but rather as an explanation and analysis of perceived facts which support her opinion. The expert's evidence, both written and oral, coupled with the evidence in the social worker's reports of the parents' ongoing dysfunctionality constitutes substantial evidence to support the juvenile court's finding beyond a reasonable doubt that continued custody of the children by the parents was likely to result in serious emotional or physical damage to them.

Appellant asserts that the expert's opinion did not take into account appellant's recent progress in services and her amenability to reunification. This is incorrect. The expert, Clark, was present by telephone and heard appellant's trial counsel's offer of proof regarding appellant's progress. When asked by the court if there was anything further from the tribe, Clark responded there was not. Had the evidence of appellant's progress impacted her conclusions as an expert on behalf of the tribe, she would have said so.

IV

Citing section 366.26, subdivision (c)(1)(B)(vi), appellant argues the court erred in concluding appellant had not shown there was a compelling reason for determining that termination of parental rights would not be in the best interests of the child because

15

appellant had demonstrated her current amenability to services and recent progress in the substance abuse treatment program she had entered.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption*. [Citation.]' [Citations.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child. [Citation.]" (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368, original italics.)

There are only limited circumstances which permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) The party claiming the exception has the burden of establishing the existence of any circumstances which constitute an exception to termination of parental rights. (*In re Cristella C.* (1992) 6 Cal.App.4th 1363, 1372-1373; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(4); Evid. Code, § 500.)

One of the exceptions is "[t]he child is an Indian child and there is a compelling reason for determining that termination of parental rights would not be in the best interest of the child, including, but not limited to: [¶] (I) Termination of parental rights would substantially interfere with the child's connection to his or her tribal community or the child's tribal membership rights. [¶] (II) The child's tribe has identified guardianship, long-term foster care with a fit and willing relative, tribal customary adoption or another planned permanent living arrangement for the child." (§ 366.26, subd. (c)(1)(B)(vi)(I)-(II).)

Appellant attempts to create a general "best interest" exception based on her progress in services and her claim of lack of active, Agency efforts prior to remand.

Even assuming that the statute applies to circumstances other than those which affect the child's connection to the tribe, appellant cannot demonstrate there is a

16

compelling reason for determining that termination is not in the best interests of the minors. As previously discussed, active efforts were provided to appellant both before and after the remand. Further, appellant's tardy progress in services has not demonstrated a significant period of stability and sobriety such that delay of permanency for the minors would be justified. Finally, appellant has had little contact with the minors during and after her incarceration and has virtually no relationship with them. Even trial counsel acknowledged that there was little evidence of the children's best interests to support a petition for modification. The juvenile court did not err in failing to find that the Indian child exception applied to defeat termination of parental rights.

## V

Asserting this court is a court of competent jurisdiction within the meaning of Title 25 United State Code section 1914, appellant argues this court should invalidate prior orders terminating and bypassing services because the orders were in violation of Title 25 United States Code section 1912 in that active efforts designed to prevent the breakup of the Indian family were not provided.

The ICWA statute provides: "Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 101, 102, and 103 of this Act [25 USCS §§ 1911, 1912, and 1913]." (25 U.S.C. § 1914.)

We need not determine whether this court is a "court of competent jurisdiction" for invalidation purposes since we have previously determined that active efforts were provided both before and after remand in this case. Thus, there is no basis for invalidation.

## VI

Appellant claims the forfeiture doctrine does not apply to bar consideration of any of her arguments and, if it does, then trial counsel was ineffective in failing to preserve the point for appeal.  Since we have not applied the forfeiture doctrine, no further discussion of this claim is required.

## DISPOSITION

The orders of the juvenile court are affirmed.


     NICHOLSON   , J.


We concur:


     RAYE    , P. J.


     HULL    , J.